## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KENNETH ALLEN WELCHES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-02607-TWP-TAB |
| | ) | |
| MARK SEVIER, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

This matter is before the Court on a petition for a writ of habeas corpus filed by Petitioner Kenneth Allen Welches ("Welches"), challenging his 2015 Indiana convictions for child molesting in state court Cause Number 71D03-1301-FC-000010. Welches raises three claims: constitutional error in the admission of evidence, improper comments made during voir dire, and ineffective assistance of trial and appellate counsel. (Dkt. 1 at 5-9.) For the reasons set forth in this Order, the Court **denies** the petition. A certificate of appealability shall not issue.

## I. BACKGROUND

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts as follows:

> Welches is the maternal grandfather of K.M., who was born in 2001. Welches moved in with K.M.'s family in June 2010. Welches did not have a separate room, but rather stayed in the living room and slept on the couch as the arrangement was intended to be temporary. K.M. and Welches had a close relationship and they often did things together, such as playing board games, watching television, going

to McDonald's or out for ice cream, or taking rides on Welches's moped. K.M.'s brothers, one older and one younger, interacted with Welches but not to the same extent as K.M.  K.M.'s mother would sometimes leave K.M. and/or her brother's home with Welches when she had to go out.

During the summer of 2011, K.M.'s relationship with Welches changed.  One day while K.M. was home alone with Welches, Welches, who was on a couch in the living room and covered up by a blanket, asked K.M. to come over to him.  K.M. lifted the blanket and saw that Welches had pulled his pants down and that his penis was exposed.  K.M. then went to her room.  A couple of days later, K.M. was on the couch with Welches when he told her to touch his penis with her hand.  He gave her instructions and demonstrated how she was to stroke his penis with up and down movements. K.M. touched Welches's penis, which was soft at first and then it got harder. She continued rubbing his penis until he told her to stop. This occurred about once a week for the rest of the summer. In addition to K.M. touching Welches's penis, Welches would put his hands down K.M.'s pants and touch her vagina. K.M. did not tell anyone about what Welches was doing with her because Welches told her not to and she did not think it was wrong at the time.

Welches moved out of K.M.'s home at some point after K.M. started fourth grade. K.M. eventually told her mother what had occurred. K.M.'s mother told K.M.'s father, who then called the police.  K.M. was interviewed at the CASIE Center on March 29, 2012, during which she disclosed that she had been sexually abused. K.M. was also physically examined by a nurse.  K.M. indicated that she understood the nurse would be examining her "down there because that's where her grandfather had touched her."  *Transcript* at 421.

During the summer when the molestations occurred, K.M.'s mother noticed a change in K.M.'s behavior and her physical well-being such that she sought medical advice.  K.M. was diagnosed with anxiety and it was recommended that she see a counselor. Although she did not realize it at the time, K.M.'s mother later considered some of the behavior she saw between K.M. and Welches to be inappropriate especially in light of what K.M. had since disclosed.

*Welches v. State*, 71A05-1512-CR-2249, 2016 WL 4751676 (Ind. Ct. App. September 13, 2016).

After a jury trial, Welches was convicted two counts of child molesting.  On direct appeal, he claimed that the trial court abused its discretion in denying a motion to have an alternate juror seated after the jury had been selected; that two pictures of the victim should not have been admitted; and that the evidence was insufficient to support his convictions.  (Dkt. 6-5.)  The Indiana Court of Appeals rejected these claims and affirmed his convictions on September 13, 2016.  (Dkt.

6-7.)  Welches did not file a petition to transfer to the Indiana Supreme Court.  (Dkt. 6-2 at 4–5.)

On September 12, 2017, he filed a *pro se* petition for post-conviction relief raising ineffective assistance of counsel claims, improper denial of admission of rebuttal evidence, and improper comments during voir dire.  (Dkt. 6-3 at 2–3; Dkt. 6-8.)  The state post-conviction court denied his petition.  (Dkt. 6-9.)  On appeal from this denial, Welches raised two issues:

- Was it fundamental trial error when the trial court refused submission of  material evidence in the cross examination of a State witness, resulting in  an[ ] unfair trial?

- Did improper language taint[ ] the jury selection process, denying the  Defendant a fair and impartial jury?

(Dkt. 6-10 at 2.)  He also briefly mentioned that his trial counsel referred to the victim as "the victim," and told the jury Welches would not testify unless the prosecution met its burden of proof.  *Id*. at 13-14.  He submitted additional authorities to the state appellate court which explicitly raised ineffective assistance of counsel claims.  (Dkt. 71.)  The Indiana Court of Appeals affirmed the denial of post-conviction relief, holding that Welches' claims were "waived because the issues were known and available, but not  raised on direct appeal."  (Dkt. 6-12 at 2.)  The appeals court did not address his ineffective assistance of counsel claims.  Welches filed a petition to transfer, again raising ineffective assistance of counsel, which was unanimously denied by the Indiana Supreme Court. (Dkt. 6-13; Dkt. 6-14.)

Welches then filed his petition for a writ of habeas corpus in this Court. He raised three claims: constitutional error in the admission of evidence, improper comments made during *voir dire*, and ineffective assistance of trial and appellate counsel. (Dkt. 1.)  The Court granted the Respondent's motion to dismiss Welches' claims as procedurally defaulted but vacated the Order after Welches filed a motion to alter the judgment based on his attempts to raise his ineffective assistance of counsel claims in his notice of additional authorities before the Indiana Court of

Appeals.  (Dkt. 8; Dkt. 12.)  This Court then ordered the parties to brief the merits of Welches' claims. *See Brown v. Watters*, 599 F.3d 602, 610 (7th Cir. 2010) (holding that because the procedurally defaulted claims lacked merit, the court could bypass a "difficult" actual innocence claim and address the defaulted claims on the merits); *see also Miller v. Mullin*, 354 F.3d 1288, 1297 (10th Cir. 2004) (declining to address whether certain claims were procedurally defaulted because, "[i]n the interest of judicial economy, . . . the case may be more easily and succinctly affirmed on the merits"). Briefing has been completed and this matter is now ripe for ruling.

## II.  <u>APPLICABLE LAW</u>

A federal court may grant habeas relief to a person in custody pursuant to the judgment of a state court only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2254(a).  Where a state court has adjudicated the merits of a petitioner's claim, a federal court cannot grant habeas relief unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Section 2254(d) is not the only obstacle to habeas relief.  A petitioner may procedurally default his claim by failing to fairly present it "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F. 3d 258, 268 (7th Cir. 2014).  Or a claim may be procedurally defaulted if the most recent reasoned state court decision to address the claim rejects it based on "'a state law ground that is both independent of the federal question and adequate to support the judgment.'" *Id.* (quoting *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)).

"A procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default, *or* he can establish that the denial of relief will result in a miscarriage of justice." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (internal citations omitted).

### III.  DISCUSSION

Welches raises three claims for relief in his petition for writ of habeas corpus: confrontation clause violation based on the exclusion of certain evidence, due process violations, and ineffective assistance of trial and appellate counsel. The Court will address these claims in turn.

### A.      Confrontation Clause Violation-Exclusion of Email Evidence

Welches' first ground for relief is that the trial court violated the Confrontation Clause by not allowing him to impeach the victim's mother with her out-of-court statements. Before addressing the merits of this claim, the Court must address the parties' disagreement about what out-of-court statements Welches is referring to.

The State argued in its return that the contested statements were contained in Trial Exhibit A and consisted of two emails the victim's mother had sent to Welches. (Dkt. 14 at 4.) Welches argues that the State has conflated two separate sets of messages between himself and the victim's mother—one through Facebook and one through Yahoo!. (Dkt. 19 at 3.)  He states that his claim relates to the Yahoo! messages.  *Id*.  A review of the trial transcript reveals that the trial court discussed all of the messages in one discussion before trial and declined to rule on their admissibility until they were offered at trial. (Dkt. 15-4 at 9-15.)  During cross-examination of the victim's mother, trial counsel attempted to admit an email she sent to her father, Welches, before he moved in with her.  *Id*. at 118.  Counsel wanted to admit the email to show that the victim had behavioral problems and lied before Welches moved in which would support his argument that

5

she lied about him abusing her. *Id*. at 119. The trial court sustained the State's objection to the evidence. *Id*.

The email was written on May 6, 2010, from Welches' daughter to him. It relays the victim's behavior including that she defied her mother, threw tantrums, lied, and was bossy and sneaky. (Dkt. 15-2 at 6.) Welches' daughter said she took responsibility for her child's behavior and also stated that her daughter—eight-years old at the time—was well-behaved at school and better behaved than her friends. *Id*.

In *Chambers v. Mississippi*, the Supreme Court held that a defendant has a right to "a fair opportunity to defend against the State's accusations." 410 U.S. 284, 294 (1973). This right is "rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (cleaned up). But this right has its limitations:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). The Constitution gives trial judges "'wide latitude' to exclude evidence" in accordance with these deep-rooted evidentiary rules. *Crane*, 476 U.S. at 689 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also Hinkle v. Neal*, 51 F.4th 234, 241 (7th Cir. 2022).

Welches argues that the trial court violated his right to defend himself by not allowing his counsel to impeach his daughter with the Yahoo! email designated as Exhibit A at trial. His daughter testified at the trial that she did not remember whether her daughter experienced behavioral problems before he moved in with them. (Dkt. 15-4 at 117.) The email would have

6

provided the jury with evidence that the victim had experienced behavioral issues, such as disobeying her mother and lying, before Welches arrived.  The trial court denied counsel's request to admit the email into evidence for the purpose of showing the victim's propensity to lie. *Id*. at 119.

Courts have held that excluding extrinsic evidence that an alleged victim lied about previous sexual assaults violates the Confrontation Clause.  *See, e.g., Sussman v. Jenkins*, 636 F.3d 329, 357-58 (7th Cir. 2011). But the evidence at issue here is not as relevant as a prior false allegation.  Instead, it is evidence that an eight-year-old lied about unknown topics.  The trial court's determination that such evidence was inadmissible to show the victim's propensity to lie was reasonable. *See Howlett v. Richardson*, 729 F. App'x 461, 465 (7th Cir. 2018) (holding that appellate court's determination that trial counsel was not ineffective for failing to present witness testimony that minor sexual assault victim had a general propensity to lie was reasonable).

But Welches claims that the email should have been admitted not for the purpose of demonstrating the victim's propensity to lie, but to impeach his daughter's testimony that she did not recall her daughter having behavioral issues before he moved in with them.  This argument fares no better.  The Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce *extrinsic evidence* for impeachment purposes."  *Nevada v. Jackson*, 569 U.S. 505, 512 (2013).  Because Welches points to no clearly established federal law as determined by the Supreme Court, relief is precluded by § 2254(d)(1).

For these reasons, Welches is not entitled to relief on his Confrontation Clause claim.

**B.** **Improper Comments During *Voir Dire***

Welches' second ground for relief is based on three alleged due process violations: 1) the judge discouraged jurors from contemplating any possible doubt; 2) the prosecutor told jurors that

they could convict on the basis of a single witness; and 3) Welches' trial counsel implied his guilt by referring to the victim as a victim and by stating that Welches would only testify in his defense if the State had carried its burden of proving his guilt.

First, the judge told prospective jurors at the beginning of *voir dire* that, for them to find Welches guilty, the State had to prove his guilt beyond a reasonable doubt. The judge went on to say that "the prosecutor cannot prove this case beyond all doubt. It just can't be done. No case can be proved beyond all doubt. There's always some possible doubt. But the prosecutors in this case believe that they can prove this charge by evidence beyond a reasonable doubt." (Dkt. 15-3 at 16-17.) The judge's statement to the jury did not violate Welches' constitutional rights. The Constitution requires that the jury is instructed that guilt must be proved beyond a reasonable doubt, but it "does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (citations omitted). In *Victor*, the Supreme Court rejected the criminal defendant's challenge to a jury instruction that defined reasonable doubt as "not a mere possible doubt; because everything relating to human affairs . . . is open to some possible or imaginary doubt." *Id*. at 7, 17.

Second, the prosecutor's statements to the jury that they could convict Welches based on the testimony of a single witness did not violate his constitutional rights. Welches points to an Indiana Supreme Court case that held that it was error for the court to instruct the jury that "[a] conviction may be based solely on the uncorroborated testimony of the alleged victim," but the error "did not affect the defendant's substantial rights" and did not require reversal. *Ludy v. State*, 784 N.E.2d 459, 463 (Ind. 2003). But *Ludy* was not based on the federal Constitution. Welches does not point to any federal case law supporting his position, and the Court is not aware of any. Furthermore, in Welches' case it is the prosecutor's statements to the jury at issue rather than

instructions from the trial court.  The Indiana Court of Appeals has held that such statements do not constitute prosecutorial misconduct.  *See Deaton v. State*, 999 N.E. 452, 456 (Ind. Ct. App. 2013) (holding that prosecutor's closing argument that "according to the Indiana Supreme Court and the Indiana Court of Appeals" the child molesting victim's uncorroborated testimony was sufficient to convict did not constitute misconduct).

Third, Welches argues that two statements by his trial counsel denied him a fair and impartial jury.  First, his counsel referred to the victim as "the victim" in front of the jury.  He argues that this implied that his counsel thought he was guilty.  The Seventh Circuit has held that the use of the term "victim" in jury instructions is not a constitutional violation.  *Server v. Mizell*, 902 F.2d 611, 615 (7th Cir. 1990).  Welches has not identified any case law supporting his argument that his counsel's use of the term violated the Constitution, and the Court has found none.

His argument that his counsel implied to the jury that if Welches testified at trial, then the State had proven its case against him also lacks support.  During *voir dire*, Welches' counsel emphasized that the State had the burden of proof and questioned whether jurors could find Welches not guilty if he did not testify in his defense:

> Okay. We've touched on this. Mr. Welches and I don't have to [do] anything in the case. The State has the burden of proof. And that's a little tough for you because some of us had said, well, I'd like to hear from more than one. Or I'd like to hear from — the defendant could sit back and say, you know, I don't think they proved their case; they didn't prove their case beyond a reasonable doubt so I'm not going to testify. Why should I?  They didn't prove it.
>
> Would you — can you be a juror on the case where the defendant decides I'm not — for whatever reason I'm not going to take the stand. I don't need to take the stand. Whatever it is, I'm not going to testify.
>
> ….
>
> Now I'm not saying in this case whether he is or isn't, but I need to know whether you would expect that to happen, and would it affect your judgment whether the State proved its case.

(Dkt. 15-3 at 104-06.)

It is a violation of defendant's Fifth Amendment rights to comment directly on his failure to testify. *Griffin v. California*, 380 U.S. 609 (1965). But asking "potential jurors whether they understood that a defendant does not have to testify . . . has never been characterized as [] using a defendant's silence as evidence against him." *U.S. ex rel. Branch v. Godinez*, 48 F.3d 1222 (7th Cir. 1995). Counsel's statements did not deny Welches a fair and impartial jury.

## C.    Ineffective Assistance of Trial and Appellate Counsel

Welches' third ground for relief is that his trial and appellate counsel provided ineffective assistance of counsel. A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish that "counsel's assistance was so defective as to require reversal," a petitioner must show: (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the petitioner. *Id.* "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673–74 (7th Cir. 2018) (citation and quotation marks omitted). "As for the performance prong, because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 674 (citation and quotation marks omitted). "The prejudice prong requires the defendant or petitioner to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

10

1.    **Trial Counsel**

Welches argues that trial counsel was ineffective when he failed to object to the judge's comments to the jury distinguishing reasonable doubt from all possible doubt and the prosecutor's statement that the jury could convict Welches on the basis of a single witness' testimony.  He also argues that trial counsel was ineffective when he referred to the victim as the victim in front of the jury and suggested that Welches might not chose to testify if the State failed to carry its burden of proof.

As discussed above, neither the judge's statements about the standard of proof, nor the prosecutor's comments about convicting on the basis of a single witness violated Welches' rights. There is no indication that any objection to them would have been sustained.  And the Seventh Circuit has long held that "[c]ounsel is not ineffective for failing to raise meritless claims." *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

Trial counsel's discussion with the jury ensuring that jurors would be willing and able to find Welches not guilty even if he did not testify was not deficient performance.  It is a violation of a criminal defendant's rights to suggest that his *failure* to testify implies his guilt.  *Griffin*, 380 U.S. 609.  Welches argues that his counsel's comments to the jury created the opposite impression that his ultimate decision to testify was proof that the State had proved his guilt beyond a reasonable doubt.  Again, Welches points to no caselaw to support his argument and the Court is aware of none.  Defense counsel informed the jury that Welches might choose not to testify because the State had not carried its burden, or for any other reason. (Dkt. 15-3 104-05.)  He made these statements in the context of ensuring that selected jurors would not improperly place the

11

burden on Welches to prove his innocence. Given that context, Welches has not shown that trial counsel performed deficiently.  He is not entitled to relief on this ground.

### 2.   **Appellate Counsel**

Welches argues that his appellate counsel was ineffective when he failed to appeal the exclusion of Exhibit A—the Yahoo! email from his daughter.  "The general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel."  *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (noting that when the claim is poor issue selection, "appellate counsel's performance is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised").

Appellant counsel raised three issues on direct appeal: sufficiency of the evidence, the admission of photographs of the victim, and the failure to remove a juror who lived on the same street as the victim and her family.  (Dkt. 14-5.)  The Indiana Court of Appeals was not persuaded by any of the arguments, but the exclusion of Exhibit A was not clearly stronger than the issues selected by appellate counsel.  The trial court excluded Exhibit A because it was offered for the purpose of proving the victim had a general propensity to lie.  Welches argues that it should have been admitted to impeach his daughter's testimony that she did not recall whether her daughter had behavior problems before Welches came to live with them.  As discussed above, the trial court did not err when it excluded the exhibit for the purpose of proving the victim's tendency to lie, and criminal defendants are not entitled to introduce extrinsic evidence for impeachment purposes. *See Jackson*, 569 U.S. at 512.  Welches is not entitled to relief on this ground.

## IV.  CONCLUSION AND CERTIFICATE OF APPEALABILITY

For the reasons explained above, Welches' claims do not merit the relief requested. Therefore, his petition is **DISMISSED with prejudice**.  Final Judgment in accordance with this decision shall issue.

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.'" 28 U.S.C. § 2253(c)(2).  In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Reasonable jurists would not dispute that Welches' claims lack merit, and nothing about the claims deserves encouragement to proceed further.

The Court therefore **DENIES** a certificate of appealability.

**SO ORDERED**.

Date:  6/23/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kenneth Allen Welches
56729 Mayflower Road
South Bend, Indiana  46619

Tyler G. Banks
INDIANA ATTORNEY GENERAL'S OFFICE
tyler.banks@atg.in.gov